We have one other matter on today, that's Cain v. Mercy College. Thank you so much. All right, Ms. Cain, so good morning to you. You have five minutes total, but you reserved one minute for rebuttal. So that gives you four minutes now, Adam. You may proceed. May I please report? I'm Eileen Cain, and I'm proceeding pro se on appeal from the Southern District of New York. The Honorable Judge Louis Stanton presiding. Good morning, Your Honors. My issues on appeal in the context of law are controversial. Your Honors, I am talking about the Violence Against Women Act, Title IX, the Jeanne Cleary Act, the Women and the American with Disabilities Act, and the landmark cases Ashcroft v. Iqbal and Bell Atlantic Corporation v. Twombly that changed the liberal pleading status under Federal Rule Civil Procedure 8. Your Honors, my first issue on appeal contained in my brief whether my amended complaint was successful in meeting the heightened pleading standard described and outlined in the Supreme Court of the United States decision in the landmark case Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal. In Iqbal and Twombly, the Supreme Court prescribed a heightened pleading standard. First, the Court made clear that under Federal Rule 8, the pleading standard does not require detailed factual allegations but demands more than an unadorned accusation. The word unadorned, Your Honors, by Miriam Webster. Unadorned, bland, simple, plain, undecorated, and unembellished. My initial complaint, Your Honors, complied with Federal Rule 8 that a short and plain statement of the grounds for the court's jurisdiction Two, a short and plain statement of the claim showing that the pleader is entitled to relief. And three, a demand for a relief sword which may include relief in an alternative or different types of relief. In essence, my initial complaint was bland, simple, unadorned, and unembellished. Nevertheless, the District Court did allow leave to amend under Federal Rule 15A2. The District Court required that I amend my complaint and gave specific instruction. Here, it is important that I, for the record, that I describe what it is that the lower court wanted in the body of my amended complaint. The lower court decided that my amended complaint should give the names and titles of all relevant persons, describe all relevant events, stating the facts that support plaintiff's case, including what each defendant did or failed to do, give the dates and times of each relevant event, or if not known, the approximate date and time of each relevant event, give the location where each relevant event occurred, describe how each defendant's act or omission violated plaintiff's rights, and describe the injuries plaintiff suffered, and state what relief plaintiff seeks from the court, such as money damages, injunctive relief, or declaratory relief, devoid of further factual enhancements. In essence, the lower court gave me the opportunity to amend the complaint, to adorn the complaint, to embellish the complaint, to heighten its standards. The Supreme Court held that a complaint that offers mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, nor does a complaint suffice if it tenders only naked assertions devoid of further factual enhancements. My amended complaint was adorned with conversations via e-mail between myself and defendants, which described a pattern of a failure for the defendants to apply by their own hearing policies. For example... But I guess the question is, what did you allege in your complaint to suggest that the motivation for the steps that they took, or didn't take, was improper? That it was based on a disability or based on race or gender? What are the facts that support a conclusion or an inference that that was the motivation? For example, there was a meeting held on defendants' campus on October 4th, and in that meeting I described a pattern of stalking, cyber-stalking, taking place on defendants' campus. At that point, defendants said to me, stalking in the past has been substantiated, but it was amongst Mercy College students, and you're not a Mercy College student. We will attempt to pursue an investigation and to come to a determination on whether or not your allegations are sufficient, if it meets Mercy College policy. In that interim, for Mercy College student body is comprised of predominantly white and Hispanic. There are very little African Americans that attend Mercy College. My inference that Mercy College, the defendant, acted in malice against me because I'm an African American woman, is due to the fact that the defendants stated that they have substantiated in the past, but at this point, they did not want to even conclude with an investigation. Alright, thank you. Thank you. Alright, you've reserved a minute for rebuttal. We'll now hear from Mr. Kramer on behalf of Mercy College. Good morning, Your Honors. Jeff Kramer of Lock Lord for the defendants' appellees. The district court issued two thorough opinions in which it carefully considered plaintiff's allegations, applied those allegations to the law, and determined that plaintiff failed to state any of her federal discrimination claims. After dismissing those claims, the court properly declined to assert supplemental jurisdiction over the remaining state court claims. While the district court laid out several reasons for the failure of each claim, the common thread running through all of them was that the two complaints contained no allegations, even suggesting a discriminatory motive by the college. Even liberally construed, there are simply... Can I ask you, Mr. Kramer, I have a question regarding the Title IX allegations. Within the complaint, there is a claim that there was a failure to adequately investigate because of the fact that the alleged perpetrators of the harassment were women. Given that case law has recognized that gender stereotyping and sexual orientation can constitute cognizable claims of sex discrimination, why isn't that allegation about the failure to investigate based on the gender of the alleged perpetrators, why was that not sufficient to state a plausible claim? Sure. So first, there was an investigation into the claim. The only allegation that was clearly stated in the complaints of cyber-stalking or stalking on campus was the incident in the library. And the exhibits attached to plaintiff's amended complaint show that the college actually did investigate that claim and that there was a disturbance in the library, but the college determined that it was not directed at... Although I think the allegation was that it was... a thorough or adequate investigation, I think. Sure. As I recall, that is maybe one statement made in the voluminous two complaints, and I didn't see any other allegations supporting or any facts supporting that allegation at all. There are a lot of allegations about the stalking or cyber-stalking where it's very unclear who is doing what, when, and where. So a single sort of legal conclusion somewhere in one of the complaints about the alleged perpetrators being female isn't enough to sustain a Title IX claim. If I may ask... I'm sorry, is that... Do you have a follow-up? Okay. So your colleague on the other side made an allegation that shortly after she had her October 4, 2019 meeting, there were calls being made to her classmates. Would those allegations support a hostile learning environment claim? No, because there were no allegations that those calls, if we're assuming those allegations to be true, that calls were made, there's no allegations tying those calls to any discriminatory motive at all. There are no allegations that the calls were made because she was a woman or because she was African American or because she has PTSD. Is that an accurate way to characterize it, though? If there is a perceived mental illness and they're acting on that, with regard to the ADA-related claims, the calls, if that perceived mental illness is what is causing them to make the alleged calls, there is some connection there, isn't there? Well, I'm not sure that the complaint ever ties the perceived mental illness to the calls. I certainly didn't get that. I was reading the complaints, and it wasn't clear to me why the calls were being made other than it appears that Ms. Kane had complained about issues on or off campus about stalking. Right, but those allegations were also made in the context of informing the defendant about the PTSD, correct? That's within the complaint as well. Yeah, the way I read that complaint, Your Honor, or the way I read those allegations, Your Honor, is that it's something Ms. Kane mentioned during the October 4th interview is that she was suffering from PTSD. It was an additional fact during the discussion with the college, but that the heart of that complaint was that she was suffering or that, sorry, she was the victim of stalking and cyber-stalking either on or off campus at some unknown date and time. I don't believe that the complaint ties the PTSD to the alleged cyber-stalking, and that the calls were therefore a product of the alleged disability. So my final point is just that the correspondence and reports attached to the amended complaint actually show that the college took the complaint seriously. With respect to the grade dispute, the college allowed plaintiffs to participate in all three levels of appeal for grade and that they did investigate the incident in the library. For all those reasons and the reasons in our brief, we ask the court to affirm. Thank you. Okay. Thank you, Mr. Kline. Now we'll hear from Ms. Kane for a minute. You may proceed, Ms. Kane. Yes. Counselor states that there was an investigation and they apparently harped on the library incident. However, my documents support that there wasn't any investigation. There was no investigation that was delivered to me in hard copy to describe an event of an investigation. Additionally, the phone calls as it pertained to my PTSD, on the October 4th meeting, it was my intention to give Mercy College a background of the cyberstalking. I explained to them that I had been terminated from other schools of higher education after complaining about that I'm a victim of cyberstalking. And to uphold their determination, the school stated that I was unfit to attend their classes based on my PTSD. In addition, the same questions that were asked of the students were stated in the prior school, stating that I was talking to walls, having outbursts in classes, disrupting class, disrupting the teacher, speaking incoherently to myself or to the wall. And these are the same questions that were asked of the students. In addition to that, the hearing that took place, the professor substantiated that three students, although I dispute that there were three students, there were many students from some different classes. It wasn't just one class that these telephone calls were made to. But the teacher, the professor, substantiated that there were three students that came into class and were very concerned about attending class because of these phone calls. Now, the timing for these phone calls land directly after I had the meeting with the defendants at their Jobs Ferry campus. The October 4th was a Friday. That following Monday, students, or Tuesday, whatever the next session was, students came to class upset and concerned about these phone calls. In addition, the students expressed to me that these defendants were trying to coerce students to speak ill of me. Now, how do we tie my disability in with discrimination based on a perceived disability? Had I not given these defendants the information that I was terminated from higher education and these schools upheld their determination by saying I was unfit, would these phone calls have taken place? I do not know. But at this juncture, it does appear that these phone calls were made because of my informing these defendants that I did have PTSD and I was terminated from higher education. Now, as far as an investigation goes, there were... I was informed by two different persons from the college that there was an investigation. However, I was not privy to any conclusion of the investigation, what it entailed, what it involved, nothing. All right. Well, thank you. You've gone a little over, but I think that's okay. We will reserve decision. We have your papers. Thank you very much. Thank you. That concludes the arguments on the calendar for this morning. There's one other case that's on submission. Before I adjourn, I want to thank our courtroom deputies.